Mary T. JIRON et al., Plaintiffs,

v.

SPERRY RAND CORPORATION (SPERRY–UNIVAC), a Delaware Corporation, Defendant.

No. C 74–274.

United States District Court, D. Utah, C. D.

Feb. 14, 1975.

David K. Robinson, George C. Morris, Jay W. Mitton, Salt Lake City, Utah, for plaintiffs.

Haldor T. Benson, Salt Lake City, Utah, Margaret C. Poles, E. E. O. C., Washington, D.C., for defendant.

## ORDER

ALDON J. ANDERSON, District Judge.

Plaintiffs initiated this action by filing a complaint on August 30, 1974, which alleged that defendant Sperry Rand Corporation had violated certain provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e et seq. That complaint alleged that Sperry Rand had discriminated against plaintiffs and all other female employees of defendant in its Utah operation in areas of job and grade classifications, salary and wage levels, employee evaluation systems, lay-offs and rehiring, training programs, promotions, and employment. Plaintiffs claim that the discrimination was not only on the basis of sex, but related to race and national origin as well.

Plaintiffs, through their attorney Jay Mitton, first filed a charge with the Anti-Discrimination Division of the Industrial Commission of Utah on November 21, 1973, recounting essentially the same charges, based exclusively on sex discrimination. The Industrial Commission instituted an investigation of those charges, but the scope at no time extended to include racial or national origin discrimination, claims of harassment, or lay-off and rehiring practices. During the same period conciliatory discussions were held between Commission representatives and Sperry Rand, which resulted in a remedial agreement embodied in a letter dated April 3, 1974, from John J. McGurk to Manuel Vigil, the Commission representative.

On January 11, 1974, notice was sent to the District Office of the Equal Employment Opportunity Commission in Denver, Colorado of the charge filed by the plaintiffs with the Industrial Commission "referring it to you as it may fall within your jurisdiction." That letter indicated, how-

ever, that the charge was still under investigation by the Utah Commission. On March 13, 1974, the Equal Employment Opportunity Commission assumed jurisdiction over the charge. On July 24, 1974, right to sue letters were issued to the plaintiffs, with the notation that the EEOC had dismissed the charge for failure to proceed based on the charging party's request for "right to sue" authorization. The plaintiffs now bring this civil action qualified by those "right to sue" letters.

Defendant Sperry Rand has filed several motions in this case, a motion to dismiss and to strike and a motion for order denying class action. In its motion to dismiss and to strike, defendant argues that the complaint improperly alleges discrimination on the basis of race and national origin and in the areas of lay-offs, rehiring and harassment since those claims were not included in the charge filed with the Industrial Commission of Utah and the EEOC. In addition, the defendant seeks to strike the claims for punitive damages, for damages compensating pain and suffering, and for an "inflationary factor" in the computation of damages and back pay, on the ground that the remedy provided for in § 2000e does not allow such damage awards. Finally, defendant moves to strike the claim in the complaint that it finance the notice to prospective members of the alleged class. In its motion to deny the class action, the defendant argues that plaintiffs have failed to properly allege the requirements of Rule 23 for a class action and that, specifically, they have failed to sufficiently set out facts in support of such a class.

Plaintiffs in their answer stipulate that the claim for an "inflationary factor" may be stricken, contest the balance of defendant's motions, and have moved the court to certify the class.

## I.

When Title VII of the Civil Rights Act of 1964 was passed by Congress strong support was evidenced for first-stage correction of prohibited discrimination at the state and local levels. *See Dubois v. Pack-*

*ard Bell Corporation,* 470 F.2d 973, 975 (10th Cir. 1973). That sentiment resulted in the procedure outlined by § 2000e–5(b) and (c), which require the filing of charges of discrimination initially with a state authority, if any, and then with the EEOC, prefatory to the bringing of a private civil suit. In order to bring a private employment discrimination suit under Title VII, a plaintiff must, as a precondition, have a "right to sue" letter from the EEOC, which issues only after administrative investigation and negotiation. There are two purposes for that procedure:

> "[f]irst, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law."

*Bowe v. Colgate-Palmolive Company,* 416 F.2d 711, 719 (7th Cir. 1969). Another benefit which results from the prefatory processing by the EEOC is to "narrow the issues to be adjudicated." *Hecht v. Cooperative for American Relief Everywhere, Inc.,* 351 F.Supp. 305, 311 (S.D.N.Y.1972). While the requirement of preliminary administrative processing can result in duplication where state agencies exist parallel to the EEOC, as in Utah, the complaint of discrimination has the benefit of potentially two investigations and of both a local and near-local effort at resolution. The consequence of this procedure is that the complaint in a civil action must substantially conform to the charges made before the state agency and before the EEOC. A civil complaint may not include allegations of discrimination unless the administrative investigation based on the administrative complaint included or reasonably might have included those areas of discrimination. The requirement of preliminary administrative action is premised on the purposes set out in *Bowe,* since new and different charges in the civil suit would preclude prior notice and negotiation for voluntary compliance.

Defendant points out that the charge filed with the Industrial Commission and with the EEOC did not include allegations

of racial or national origin discrimination or claims of harassment or lay-off and rehiring discrimination. It appears by affidavit of the investigator for the Industrial Commission that none of those claims was considered in that investigation. Moreover, none of those charges surfaced while the EEOC had jurisdiction. Therefore, the defendant argues, plaintiffs may not include those charges in this complaint.

The standard by which courts have evaluated such disputes was set out by the Fifth Circuit in *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir. 1970), which stated that "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." 431 F.2d at 466. *See also Oubichon v. North American Rockwell Corporation,* 482 F.2d 569, 571 (9th Cir. 1973) ("any discrimination like or reasonably related to the allegations of the EEOC charge"); *Tipler v. E. I. duPont deNemours and Co.,* 443 F.2d 125 (6th Cir. 1971); *Equal Employment Opportunity Commission v. Hickey-Mitchell Company,* 372 F.Supp. 1117 (E.D.Mo.1973); *Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964,* 84 Harv.L.Rev. 1109, 1218 (1971) [hereinafter cited as *Developments—Employment Discrimination*].

■ Most courts have concluded that a liberal application of the *Sanchez* standard in particular cases is appropriate. *See Kinsey v. Legg, Mason & Company,* 60 F.R.D. 91 (D.D.C.1973); *Developments—Employment Discrimination, supra* at 1217. This liberality reflects both the congressional intent to fully remedy employment discrimination and the judicial recognition that initial charges frequently are "filed by lay complainants who are unfamiliar with the niceties of pleading and are acting without assistance of counsel." *Tipler v. E. I. duPont deNemours and Co., supra* at 131. *See also Graniteville Co. (Sibley Div.) v. Equal Employment Opportunity Commission,* 438 F.2d 32, 41 (4th Cir. 1971). In that perspective the requirement is not intended to become a formalistic and technical obstacle

for plaintiffs that have been discriminated against. The Ninth Circuit reflected that constructional spirit when it stated in *Oubichon* that to make a plaintiff repeat his administrative filing "every time he claims a new instance of discrimination . . . would erect a needless procedural barrier." 482 F.2d at 571. Thus, to satisfy the requirement that the scope of the administrative charge must be substantially identical to the scope of the judicial complaint, the plaintiffs need not show that specific claims now made were actually investigated by the EEOC or state agency, but only that they are "reasonably related" to those initial charges. *See Hecht v. Cooperative for American Relief Everywhere, Inc., supra* at 311–12.

■ A functional approach to applying the *Sanchez* standard in specific cases is to consider whether the purposes of the preliminary administrative process are satisfied. Thus, in evaluating whether "the scope of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination," the most important considerations are whether the defendant had sufficient notice from the administrative charge of the alleged kinds and areas of discrimination and whether the administrative agencies and employers involved had an opportunity to work on a conciliation agreement for voluntary compliance in the challenged areas.

■ The first claims in the complaint challenged by defendant as new are the allegations of racial and national origin discrimination added to the initial charge of sex discrimination. In support of the inclusion of those charges, plaintiffs cite a number of cases which allow amplification of the complaint. *See Sanchez v. Standard Brands, Inc., supra* (allows amendment of sex discrimination complaint to include racial discrimination); *Latino v. Rainbo Bakers, Inc.,* 358 F.Supp. 870 (D.Colo.1973) (allows amendment of complaint of national origin discrimination to include sex discrimination). However, these cases differ in one critical respect from the present case.

In both *Sanchez* and *Latino,* the EEOC investigation had specifically dealt with the kind of discrimination sought to be added in the judicial complaint. Thus, in those cases, the purpose of notice and the opportunity for voluntary compliance were satisfied, since the companies involved knew of the charged discrimination in advance of the judicial complaint (albeit somewhat later than the filing of the administrative charge) and were given an opportunity to consider and change their policies and practices through negotiation with the EEOC prior to filing of the judicial complaint. Neither of those purposes was satisfied in this case, since Sperry Rand did not have notice prior to the filing of the judicial complaint that racial and national origin discrimination were at issue and, consequently, no opportunity for voluntary compliance in those areas was available. The effect of inclusion in the administrative investigation is critical, since sex discrimination is different in premise and kind than racial or national origin discrimination. Moreover, the plaintiffs are unable to claim judicial indulgence and liberality of application on account of their lay unfamiliarity with the law, since their administrative charge was prepared by an attorney. It is the court's conclusion that, in the absence of an actual investigation by either the state agency or the EEOC of racial or national origin discrimination, the addition of those charges in the judicial complaint is improper.

Plaintiffs' complaint, by asserting both sex and racial discrimination, also raises the problem of whether male members of the allegedly discriminated against races ought to be included in the suit. There are three possible views of the case given that problem: either the present alleged class is underinclusive, since no male minority race members are included, or the class ought to be expanded to include male minority race members, which undermines the sex discrimination identification, or the discriminatory classifications of sex and race have a synergistic effect, which to some degree impliedly dilutes the singular claim of sex discrimination by non-minority race fe-

males. That dilemma posed by the addition of race and national origin discrimination allegations highlights their lack of relationship to sex discrimination. Thus, defendant's motion to strike the allegations of racial and national origin discrimination is granted.

■ Defendant also contests plaintiffs' addition of claims of discrimination in the areas of lay-offs and rehiring, for which the measure is again the standard enunciated in *Sanchez.* Several cases dealing with similar problems provide guidance here. In *Tipler v. E. I. duPont deNemours and Co.,* 443 F.2d 125 (6th Cir. 1971), the plaintiff filed an administrative charge alleging that his discharge was based on his union activities and his race. In his judicial complaint, the plaintiff added as a third cause of his discharge his opposition to unlawful employment practices. The court allowed the expanded complaint, stating that "[t]he fact that a judicial complaint alleges a more detailed and refined contention than that contained in the charge of discrimination does not mean that the former was not included in the latter." 443 F.2d at 131. In *Joslin Dry Goods Co. v. Equal Employment Opportunity Commission,* 483 F.2d 178 (10th Cir. 1973), the Commission sought to discover information about hiring practices, although the filed complaint charged only a racially discriminatory discharge. The court sustained the Commission's pursuit of hiring information, holding that hiring data was relevant to the charge. Defendant Sperry Rand contends that *Joslin* is not proper precedent since the issue was the scope of the administrative agency's investigative authority rather than the scope of the judicial complaint of a private litigant. However, for the purpose of this case it is not necessary to reach the conclusion that the two scopes are identical, and the *Joslin* case can be considered as simply providing some insight as to the strength and logic of the relationships between several areas or categories of employment practices. One other case, factually similar to this action, extensively discussed the reasons for the court's acceptance of a judicial complaint

expanded to include additional areas of sex discrimination. *Hecht v. Cooperative for American Relief Everywhere, Inc., supra.* The analysis in that opinion is worth some recitation.

"The counts of the complaint charge CARE with discrimination in the following areas: count one, recruiting and hiring; count two, unequal pay for equal work; count three, promotions; count four, overseas appointment; count five, job titles; count six, overseas travel; count seven, training opportunities; count eight, fringe benefits, particularly health insurance; and count nine, job classifications. The charges before the EEOC alleged discrimination with respect to overseas assignments (charges 1 and 2), unequal pay for equal work (3), overseas travel (4 and 5) and appointment or promotion to administrative positions (6).

CARE concedes that the subject matter of counts two, four and six—unequal pay, overseas appointments and travel—was raised before the EEOC and is therefore properly includible in the complaint. However, it argues that the other counts should be dismissed because they were not presented to the EEOC for investigation and conciliation and they constitute unfair surprise.

. . . [W]e deny CARE's motion since the counts which it attacks are clearly 'like or related to allegations contained in the charge.'

Hecht's EEOC charges constitute a broadside attack on CARE's employment practices, alleging discrimination in pay, overseas assignments, travel and that '[t]he better administrative (higher paying salaries) positions are held by males.' Counts one, three and seven—charging discrimination in recruiting and hiring, in promotions and in providing training opportunities—are intrinsically related to Hecht's claim that CARE reserves its executive positions for men, since it would be impossible for CARE to fill them by any other means. Counts five and nine—alleging discriminatory use of job titles and classifications—flow logically from the same EEOC charge. Plaintiffs allege

that CARE classifies higher positions as 'male' and lower positions as 'female' and that CARE avoids appointing women to higher echelon positions by having them to do the same work as its male administrators but giving them less prestigious job titles. Thus, counts five and nine embody the same type of discrimination as that specified in EEOC charge 6. Count five also ties in with the unequal pay charge because, allegedly, by giving a female-occupied position a less prestigious title, although it entails the same duties as a higher ranked post, CARE pays the woman employee less for the same work.

Count eight, which alleges discrimination in fringe benefits, particularly health insurance, also relates to the equal pay charge. It is reasonable and perhaps customary to consider company-provided insurance as part of an employee's compensation. If, as plaintiffs allege, CARE discriminates against women in health insurance coverage, it has in effect reduced their pay scale below that of their male counterparts."

351 F.Supp. at 311–12 (citations omitted).

Defendant, however, cites several cases disallowing the expansion of complaints to include additional areas of employment practices. In *Kinsey v. Legg, Mason & Company, Inc., supra,* a black plaintiff claiming discrimination in hiring sought to add employment practices to his judicial complaint, which the court disallowed, relying primarily on the fact that such practices had not been part of the EEOC investigation. It appears that the court viewed the administrative charge of discrimination in hiring as directed primarily to the interviewing, testing and selection process, which it concluded was sufficiently different from other employment practices affecting present employees. Thus, the case seems to distinguish between rejected applicants on the one hand and actual employees on the other in evaluating the relation of various employment practices. Defendant also cites *Wilkins v. Electron Corporation,* 4 F.E.P. Cases 418 (D.Colo.1970), which did

not allow a later allegation of harassment to be added to a complaint of racial discrimination. There is little enlightening discussion in the *Wilkins* case, and its factual proposition applies more readily to the defendant's challenge of the harassment charge. The final case referred to by defendant is *Gordon v. Baker Protective Services, Inc.*, 5 F.E.P. Cases 1179 (N.D.Ill.1973), wherein the plaintiff had charged only a single instance of discrimination in his administrative complaint but had attempted to add charges of continuing discrimination in his judicial complaint. The court in *Gordon* disallowed the additional claims since they had not been specifically set out earlier. The court narrowly applies the appropriate standard, and the opinion is cryptic and unhelpful in reaching a conclusion in this case.

Addressing the facts in this case, the issues of lay-offs and rehiring were not specifically investigated by either administrative body. Moreover, plaintiffs did have the benefit of an attorney in the drafting of their initial charge. However, it is the court's conclusion that issues of discriminatory lay-offs and rehiring are within the reasonable scope of an investigation based on the administrative charge filed here, and consequently are properly included in this complaint. While the greater weight of precedent favors an inclusive view, the primary supporting factor is the relationship of lay-off and rehiring policies to other employment practices named by plaintiffs. Plaintiffs, as continuing employees complaining about a wide variety of employment practices, implicitly bring under scrutiny all practices and policies relating to current employees, of which the lay-off policy is a part. In addition, if the charges of discrimination in job classifications, promotions, and employee evaluation systems are valid, there would be a direct effect on those employees laid off and rehired. Hence, defendant's motion to strike the lay-off and rehiring allegations is denied.

█ The final additional allegation which defendant seeks to strike is the charge of harassment. The only case directly on point is *Wilkins v. Electron Corporation, supra,* which denied the addition of a harassment charge. Plaintiffs in their memorandum have not attempted to defend the addition of that charge. Moreover, as discussed in *Wilkins,* harassment is a form of conduct rather than an employment practice, i. e., harassment may exist coincidentally or separately from any employment practice. Allegations of harassment imply intentional conduct which is both legally and morally reprehensible, and some courts have specifically identified harassment as an activity warranting additional remedies. *See* Comment, *Implying Punitive Damages in Employment Discrimination Cases,* 9 Harv.Civ.Rights-Civ.Lib.L. Rev. 416, 455–56 (1974) [hereinafter cited as *Implying Punitive Damages*]. Harassment, therefore, is the kind of discriminatory conduct which must be specifically charged rather than implied from an administrative complaint. Defendant's motion to strike the allegation of harassment is granted.

## II.

A second category of issues raised by defendant's motion to strike relates to the scope of damage remedies sought by the plaintiffs. In their complaint, plaintiffs have asked for punitive damages and for compensatory damages for mental and physical suffering. Sperry Rand contends that the statutory provision for remedies does not countenance such awards.

The controlling provision on employment discrimination damages in the Civil Rights Act is Section 2000e–5(g).

"If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organi-

zation, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable. No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 2000e–3(a) of this title."

The position of the two parties is essentially one of statutory construction. Plaintiffs contend that punitive and compensatory damages are not explicitly precluded by the statute, that they are within the broad scope of powers granted by the statute, and that such remedies are in harmony with the statute's purpose. Defendant maintains that such remedies are not equitable remedies within the statute's grant, that their omission as remedies was intentional, and that the majority of decisions on point deny such remedies. The Secretary of Labor has filed an amicus brief, arguing that a decision on those remedies would be premature at this stage. Defendant observes that its motion seeks to strike such damages as a matter of law and that deferring judgment for further evidence would recognize the possibility of such damages as a matter of law.

Considering the issue of punitive damages first, the parties seek to contrast and count the precedent as either admitting such damages or denying them. However, a third group of cases, in which ruling on exemplary damages is postponed for some reason, deserve separate attention. The most frequently cited case denying punitive damages is *Van Hoomissen v. Xerox Corporation,* 368 F.Supp. 829 (N.D.Cal.1973). In that decision, the court rejected punitive damages as a permissible award on four grounds: 1) the Congressional record did not indicate an intention "that courts would punish defendants by imposing upon them large money awards in the form of compensatory or punitive damages"; 2) under the closely 'analogous sections of the National Labor Relations Act, §§ 160(b) and 160(c), punitive damages are not allowed; 3) a 1972 amendment of Title VIII specifically provided for punitive damages, thus implying a deliberate decision not to so amend Title VII; and 4) the remedial pattern of § 2000e–5(g) is specific and therefore definite. *Id.* at 836–38. The cases citing *Van Hoomissen* usually include part or all of its reasoning. *See, e. g., Loo v. Gerarge,* 374 F.Supp. 1338 (D.Haw.1974); *Howard v. Lockheed-Georgia Co.,* 372 F.Supp. 854 (N.D.Ga.1974). In addition, several courts have denied exemplary damages on the ground that the remedies provided by the statute were explicitly and exclusively equitable, and exemplary damages are a legal rather than equitable remedial tool. *See Head v. Timken Roller Bearing Company,* 486 F.2d 870 (6th Cir. 1973); *Robinson v. Lorillard Corporation,* 4 Cir., 444 F.2d 791, *cert. denied,* 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971); *Van Hoomissen v. Xerox Corporation, supra* at 836 n.5. Further, another case which did not specifically exclude punitive damages may be taken to have held that back pay was the *only* appropriate money award, even if bad faith was demonstrated. *See United States v. N. L. Industries, Inc.,* 479 F.2d 354 (8th Cir. 1973).

In contrast, only three cases support plaintiffs' claim for exemplary damages, and in only one did the court actually grant such damages. In *Stamps v. Detroit Edison Company,* 365 F.Supp. 87 (E.D.Mich.1973), the court awarded substantial punitive damages on a clear showing of malice for what it viewed as longstanding and obdurate discriminatory practices. The other two cases held that punitive damages might

be awarded under appropriate circumstances and allowed plaintiffs to proceed with evidence on punitive damages. *See Dessenberg v. American Metal Forming Company,* 6 F.E.P. Cases 159 (N.D.Ohio 1973); *Tooles v. Kellogg Company,* 336 F.Supp. 14 (D.Neb.1972).

The third group of cases have in common a holding denying punitive damages without generally making explicit whether the ruling was one of law or fact. An example is *Brito v. Zia Company,* 478 F.2d 1200 (10th Cir. 1973), in which the court stated that

"Brito contends that the award of nominal damages for breach of the conciliation agreement does not adequately compensate him for loss of benefits. He also seeks punitive damages because Zia condoned an atmosphere of hostility. The contention has no merit in view of the fact that Brito was awarded damages for loss of wages and was reinstated to his former position. Brito has not established any basis for a damage award for breach of the agreement. The record supports only the award of nominal damages."

478 F.2d at 1204. The opinion fails to make clear which contention has "no merit," and whether that contention, if it was the claim for punitive damages, was rejected on legal or factual grounds. Other examples of such decisions are *Slack v. Havens,* 7 F.E.P. Cases 885, 891 (S.D.Cal. 1973), holding that "[p]unitive damages are not found to be appropriate, in view of plaintiffs' failure to demonstrate that defendant Industries' unlawful employment practices were committed willfully and for the clear purpose of discriminating against plaintiffs because of their race," and *Gary v. Industrial Indemnity Company,* 7 F.E.P. Cases 193, 196 (N.D.Cal.1973), which stated that "[m]otions to strike punitive damage claims are disfavored at a preliminary stage in the proceedings." In neither of those cases were punitive damages granted, but neither court clearly disallowed punitives only as a matter of fact. Finally, plaintiffs have cited *Tidwell v. American Oil Company,* 2 F.E.P. Cases 1121 (D.Utah 1970), for the proposition that punitive damages may be granted if the facts so warrant. However, the preliminary order in *Tidwell* cited by plaintiffs only postponed the decision on punitive damages until after the facts were determined. That holding allows but does not require a reading that punitive damages were recognized by the *Tidwell* court as an acceptable remedy. Moreover, in the final adjudication of that case, punitive damages were not mentioned. *Tidwell v. American Oil Company,* 332 F. Supp. 424 (D.Utah 1971).

Given that the majority of those cases on point have denied punitive damages, although only in a somewhat smaller majority is the ruling clearly one of law, defendant's motion to strike the punitive damage claim is recommended but not commanded by precedent.

Plaintiffs suggest several additional grounds for allowing punitive damages and rely heavily on two favorable articles. *See Implying Punitive Damages, supra; Developments—Employment Discrimination, supra* at 1261–69. In the *Developments* article, the editors support the awarding of punitive damages on the two additional grounds of added encouragement for the bringing of private cases and compensation for intangible injuries otherwise uncompensated by the Act. The 1974 Comment on implying punitive damages adds as grounds the expansive remedial powers given to courts by the statute, the greater deterrent force in punitive damages, the particular role as punishment for conscious wrongdoing, and the value of a means to distinguish between defendants whose discriminatory conduct was either intentional or unintentional.

The argument of the value of exemplary damages in cases distinguishing between intentional and unintentional discrimination by employers is based on the Supreme Court's decision in *Griggs v. Duke Power Company,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), which held that good intent does not exonerate an employer whose practices are found to be discriminatory. Plaintiffs argue that since employers

are liable without reference to their intent, punitive damages are an especially appropriate method of dealing with cases of intentional and malicious discrimination, since those instances merit heavier sanctions and penalties.

 Notwithstanding the merit of the points raised by plaintiffs, it is the court's conclusion on balance that the better view is to exclude punitive damages as a remedy under Title VII. There are several reasons prominent to that conclusion. The first consideration relates to the institutional roles of courts and Congress as delegated by the Constitution. Statutes, as reflective of legislative judgments, are not subject to strained interpretations to accommodate the preferences of judges. Courts ought to be reluctant in making substantial alterations in statutory fabric, while at the same time recognizing the need to construe and apply statutes fairly and even creatively in accordance with the statutory purposes. Thus, the process of interpreting this statute and applying it to the claim for punitive damages begins with reference to the plain meaning of the statutory language and the purpose or purposes behind its enactment. *See* H. Hart & A. Sacks, *The Legal Process,* 1411–12 (tentative ed. 1958).

 In considering § 2000e–5(g) and its possible comprehension of punitive damages, the critical language is that

"the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate."

Plaintiffs unsuccessfully argue that the omission of punitive damages as a remedy is a neutral fact, since the provision is specific in contemplating "any other equitable relief." Punitive damages are generally viewed as a form of legal rather than equitable relief. *See Van Hoomissen v. Xerox Corporation, supra* at 836 n.5. Moreover, when a court is exercising equitable powers pursuant to a specific statutory authorization, there is less reason to grant exemplary damages than when a traditional equitable form of relief is sought by way of a general statutory or common law cause of action.

 In addition to the specification of remedies which appears to exclude punitive damages, the context of the legislation provides some guidance in interpreting the words. Although the legislative history is ambiguous on this issue, *see Guthrie v. Colonial Bakery Company,* 6 F.E.P. Cases 662 (N.D.Ga.1972), a modern legislature, which is presumptively familiar with a variety of remedial schemes, may be taken to have considered and rejected other remedies when it is specific as to the remedies for violation of a statute.

An understanding of the general purpose of Title VII also proves insightful on this issue. While it is clear that a statute may represent several purposes, the Supreme Court has summarized the purpose of Title VII in one case.

"The objective of Congress in the enactment of Title VII . . . was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees."

*Griggs v. Duke Power Company,* 401 U.S. 424, 429–30, 91 S.Ct. 849, 853, 28 L.Ed.2d 158. In the context of this case that purpose may be described as one of eliminating discrimination in employment practices broadly rather than providing private causes of action to compensate individuals injured by employment discrimination. An examination of the provisions of section 2000e makes clear the design to eradicate such employment discrimination, whether by voluntary compliance, administrative effort, or private litigation. Thus, the statutory inclusion of private suits by injured employees is one means by which the overall purpose of correcting such practices is achieved. However, the limited role of

such private suits within the scope of Title VII evidences its purpose as a means rather than an end. Consequently, specific limitations of such private actions as defined in provision 5(g) (reinstatement, back pay) are not subject to purposive expansion. In eliminating such employment discrimination, Congress apparently felt that sufficient encouragement to private suits was provided in the remedies of 5(g), and a judicial raising of the stakes to increase that encouragement would go beyond the specific legislative scheme.

Plaintiffs argue that the additional deterrent effect of punitive damages does in fact further the main purpose of eliminating employment discrimination, and is not exclusively aimed at compensating injured litigants. However, since courts are given unlimited equitable powers by which to fashion relief and sanctions, the strengthening of the deterrent effect by adding exemplary damages is incremental at best. Courts have found other means by which to vary the size of money awards relative to the conduct of defendant employers. For example, attorneys' fees may be granted, *e. g., Clark v. American Marine Corporation,* 320 F.Supp. 709 (E.D.La. 1970), or back pension benefits awarded in addition to back pay, *see Rosen v. Public Service Electric & Gas Company,* 477 F.2d 90 (3d Cir. 1973), or an interest factor tied to the back pay award, *see Tidwell v. American Oil Company,* 332 F.Supp. 424 (D.Utah 1971), or interim unemployment compensation not deducted from the back pay award, *see Tidwell v. American Oil Company, id.* Thus, to the extent that compensating injured employees is a secondary purpose of the statute, a number of means exist to substantially accomplish that goal.

Therefore, defendant's motion to strike plaintiffs' claim for punitive damages is granted.

■ On the issue raised by the motion to strike the damages claim for mental and physical pain and suffering, the same analysis with regard to the legislative purpose and the statutory language considered above in connection with punitive damages

applies here. Damages for pain and suffering, described for convenience here as compensatory damages, are not specifically mentioned in 5(g), nor are they a traditional equitable remedy. Moreover, such compensatory damages are closely related to personal causes of action and less clearly significant to the achievement of the primary purpose of wide elimination of employment discrimination.

The majority of case law also supports the defendant's position that such compensatory damages are not recognized by Title VII. *See, e. g., Loo v. Gerarge,* 374 F.Supp. 1338 (D.Haw.1974); *Howard v. Lockheed-Georgia Company,* 372 F.Supp. 854 (N.D.Ga. 1974). Moreover, several authorities favorably disposed to punitive damages have rejected damages for pain and suffering. *See Tooles v. Kellogg Company,* 336 F.Supp. 14 (D.Neb.1972); *Developments—Employment Discrimination, supra* at 1259–61. The view rejecting such compensatory damages is as follows:

"several commentators have suggested that a general compensatory damage remedy would provide a solution, as well as providing more adequate compensation . . . . Yet this would strain the language of the Act, and the legislative history does not lend support to a tort damage remedy.

More importantly, upon close analysis, the need to imply a compensatory remedy seems doubtful. It is indeed difficult to identify the elements of damage which would be covered by the new remedy. Compensation for virtually any monetary injury that is work-related may be awarded under the rubric of 'back pay.' Most other financial injury would not be compensable because it would be too remotely related to the discriminatory practice. Essentially the only uncompensated elements of damage, therefore, are the psychological injuries—for instance, humiliation and mental suffering. To go so far as to imply a compensatory damage remedy solely for this type of injury would be of doubtful propriety, particularly since the extent of congressional

concern for the intangible losses of the aggrieved individual is suspect; recovery for mental suffering would be a significant departure from the NLRB practice on which the remedial provisions of Title VII were modeled.

In addition, proof of mental suffering damages is speculative at best. An award of such damages often includes elements of punishment as well as compensation and, since the measure of recovery is based on the magnitude of the plaintiff's injury rather than the degree of wrong of the defendant, might well be unjust, particularly since an intention to discriminate has not been required to find a violation of Title VII."

*Developments, supra* at 1259–60.

Plaintiffs have raised one case in direct support of their position. *See Humphrey v. Southwestern Portland Cement Company,* 5 F.E.P. Cases 899 (W.D.Tex.1973). In *Humphrey,* the court's detailed explanation of its holding centered chiefly on two grounds for granting compensatory damages: encouraging the bringing of private suits and making the plaintiff who had been discriminated against whole. As discussed above, while those are important considerations, this court does not view them as controlling. The purpose of eliminating such discrimination is not substantially furthered by this additional damage element. The enforcement of the Act's purposes encouraged by the back pay recovery element and the compensation of those parties injured by employment discrimination is, for the most part, acceptably achieved by the present remedial provision. Therefore, defendant's motion to strike the claim for pain and suffering damages is granted.

### III.

Finally, the court must decide whether this action may be maintained as a class action and, if so, which party shall bear the burden of financing notice. On October 15, 1974, the defendant moved to strike the request that it finance notice to the alleged class, as requested by plaintiffs in their complaint. On that same day, defendant moved for an order denying a class action in this case, although plaintiffs had not yet moved the court for class action certification. In response to that motion, plaintiffs filed a motion to certify the class on November 1, 1974.

The defendant asserts two grounds in support of its motion to deny class status: that plaintiffs have failed to allege the prerequisite conditions set out in Rule 23 for class status and that plaintiffs have failed to set forth sufficient underlying facts in support of their request for class recognition. It is clear that pleading deficiencies may be cured by leave of the court to amend the complaint. *See Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913 (9th Cir. 1964). However, the allegations must be specific with regard to the matters outlined in Rule 23. *See Gillibeau v. City of Richmond,* 417 F.2d 426, 432 (9th Cir. 1969). In addition, plaintiffs are "obliged in [their] complaint to allege facts bringing the action within the appropriate requirements of the Rule." *Cook County College Teachers Union, Local 1600, American Federation of Teachers, AFL–CIO v. Byrd,* 456 F.2d 882, 885 (7th Cir. 1972). Consequently, a deficiency in plaintiffs' class action allegations may well be critical to the certification of the class.

Rule 23(c)(1) provides that "the court shall determine by order whether [a class action] is to be so maintained" and that such determination shall be "[a]s soon as practicable after the commencement of an action brought as a class action." Although the timing of the certification decision is primarily conditioned on the actions of the parties to the suit, it is finally and ultimately ,the discretion of the court to determine the most appropriate point in the proceedings for certification. *See M. Frankel, Some Preliminary Observations Concerning Civil Rule 23,* 43 F.R.D. 39 (1967). Two factors here argue against a certification decision at the present. First, as defendant points out, the plaintiffs' allegations are somewhat deficient. Moreover, the factual dimensions and substance of the requested .class action are incomplete and

inadequate for a present determination. For instance, it is not clear whether plaintiffs are requesting a class of female employees employed by defendant only in the state of Utah or nationwide, what the approximate size of that class would be, and what common questions of law and fact are generally present. Under such circumstances, it is appropriate to postpone the class certification. *See Robinson v. Penn Central Company*, 58 F.R.D. 436, 439–41 (S.D.N.Y.1973). "In the interim . . . it should be treated as a class suit." 3B Moore, Federal Practice ¶ 23.50, at 23–1103 (2d ed. 1974). However, since such a postponement potentially may disadvantage plaintiffs and prospective members of the class, the certification decision will be made as soon as plaintiffs have amended their complaint to comply with the requirements of Rule 23, including a more detailed description of the proposed class, have outlined with greater particularity the factual justification of such a class, and have completed whatever discovery is necessary to provide such information.

Given that decision on certification, it is premature for this court to rule on defendant's motion to strike the claim for defendant to finance notice to class members.

Based on the foregoing determinations, IT IS HEREBY ORDERED:

1. Defendant's motion to dismiss the claims for discrimination based on race and national origin and for harassment is granted.

2. Defendant's motion to strike the claims for punitive damages, for compensatory damages for pain and suffering, and for an "inflationary factor" are granted.

3. Defendant's motion to dismiss the claim based on lay-off and rehiring policy is denied.

4. Defendant's motion to strike the claim for financing of notice to class members is denied with leave to renew.

5. Defendant's motion for an order denying class action is denied.

6. Plaintiffs' motion to certify class is also denied, with leave to renew.