396 F.Supp. 133 (1975)
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,
v.
QUICK SHOP MARKETS, INC., and Thomas L. Tinsley, etc., Defendants.
Nos. 74-593C & 74-675C.
United States District Court, E. D. Missouri, E. D.
March 6, 1975.
*134 Gretchen Huston, Dist. Counsel E. E. O. C., St. Louis, Mo., for plaintiff.
John F. McCartney, St. Louis, Mo., Mary T. Matthies, Kothe & Nichols, Inc., Tulsa, Okl., for defendants.

MEMORANDUM AND ORDER
REGAN, District Judge.
By these actions, the Equal Employment Opportunity Commission (Commission) seeks to compel respondents to comply with subpoenas duces tecum issued in the course of the Commission's investigation of charges of discriminatory employment practices.
*135 The subpoena which is sought to be enforced in Cause No. 74-593C(2) was issued in connection with a charge filed in August, 1973, by a female Caucasion (Barbara Walker) complaining of alleged sex discrimination, the complaint also making the reference to racial discrimination against blacks. In Cause No. 74-675C(2) the subpoena stems from the charges originally filed in 1972 by two Caucasian males (John Barebo and David Thompson) complaining of sex discrimination by reason of hair length standards applicable only to male employees, the complaints also making reference to racial discrimination against blacks.
Admittedly, respondents partially complied with the subpoenas, but they have declined to fully comply therewith on the grounds of irrelevancy, lack of materiality and burdensomeness. As concerns the Barbara Walker case, the Commission concedes that only items 4, 5, 6, and 7 have not been fully complied with. They are:
4. A copy of the Respondent's Affirmative Action Program or writings or documents which describe any program that the Respondent maintains in regards to the hiring, recruitment and upgrading of females and Negroes.
5. Applications of all persons who have applied for employment since July 1, 1972.
6. Records setting forth the names, race, and sex of all applicants for employment since July 1, 1972, and records which set forth whether or not the applicant was hired. If the applicant was hired, into which job or position he/she was hired and the date of hire. If the applicant was not hired, the reason the applicant was not hired.
7. Records setting forth the names, race, and sex of all persons in the employ of the Respondent as of July 1, 1972, and subsequent to the date and which set forth the position held, store employed at and if not presently employed the specific reason for their termination of employment. Also, the employee's date of hire.
In the Barebo-Thompson cases, the Commission seeks enforcement of the subpoena only with respect to the following items:
7. Applications of all persons who have applied for employment since January 1, 1972.
9. Records setting forth the names and race of all applicants for employment since January 1, 1972; action taken on each application, and the reason for rejection of each application when employment was denied.
2. A copy of Respondent's Affirmative Action Program.
Preliminarily, we dispose of respondents' contentions that the subpoenas should not be enforced insofar as they relate to race discrimination, and insofar as the investigation of the Barebo-Thompson charges pertain to male hair grooming standards. With respect to racial discrimination, it is unquestioned that none of the charging parties is black. The Commission is authorized to investigate charges by aggrieved parties. Although each of the charging parties gratuitously added to the charge of sex discrimination a further statement that the employer is guilty of discriminating against blacks, it is obvious that the charging parties are not aggrieved by such discrimination and have no standing to make such a charge. And since the subpoenas are intended to further the investigation of charges of sex discrimination made by the complaining individuals and with respect to which only they and other members of their sex could be aggrieved parties, it is our view that no matter how broad the scope of the investigation of their charges of sex discrimination might be, it does not reasonably encompass a search for evidence of racial discrimination. *136 We are aware that a member of the Commission has authority to file charges in any area of unfair employment practices, but no such charge has been filed against respondents. Fishing expeditions per se are not authorized. We further note that in view of respondents' claim that they have no records which indicate the race of applicants for employment, this question, as it pertains to the production of such records, is little more than academic in the instant case.
On the issue of male hair grooming standards, respondents argue that in light of recent decisions holding that an employer's requirement that male employees adhere to a different mode of hair grooming than female employees does not constitute an unfair employment practice, the Commission has no standing to investigate hair length cases. We do not agree. True, each circuit which has considered this question (e. g. Dodge v. Giant Food, Inc., 160 U.S.App. D.C. 9, 488 F.2d 1333; Willingham v. Macon Telegraph Publishing Co., 5 Cir., 507 F.2d 1084 (decided February 12, 1975), and Baker v. California Land Title Co., 9 Cir., 507 F.2d 895, has ruled that the imposition of different hair length standards for males than females does not constitute sex discrimination. We recently so ruled in Jahns v. Missouri Pacific Railroad Company, D.C., 391 F.Supp. 761. However, neither the Court of Appeals for the Eighth Circuit nor the Supreme Court has definitively decided this issue so that we may not foreclose the Commission from conducting its investigation on the premise that an unfair employment practice may be involved.
Item 4 of the Walker subpoena (and the comparable Item 2 of the Barebo-Thompson subpoena) have not been complied with at all. We believe that the matters therein required to be furnished (other than those relating to Negroes) are at least peripherally relevant to the investigation of the charges, in that they might shed light upon the employer's present employment practices insofar as they bear upon the charges of sex discrimination.
Items 5, 6 and 7 of the Walker subpoena have been complied with only to the extent that respondents have furnished to the Commission all employment applications for the year 1973. We believe that the Commission is entitled to the remaining records listed in these items except as they may pertain to race. They are relevant in determining the pattern and practice of the employer. That there may be a large turnover of employees does not affect the relevance or materiality of the records, and in our judgment, the time period covered is a very reasonable one. The same considerations apply to Items 7 and 9 of the Barebo-Thompson subpoena where an additional 6 month period of time is involved.
Respondents argue that the Commission could (or probably would) use random sampling in investigating charges of pattern or class discrimination, and so there is no need to produce all of the records. This is a non-sequitur. It is not for respondents to pick and choose the documents from which the sampling is to be made. All of the pertinent records must be made available for purposes of examination and sampling. In addition, the fact that the Commission may choose to use random sampling does not make the remaining documents any the less relevant and material.
We turn next to respondents' allegation that the subpoenas are burdensome and oppressive. An evidentiary hearing on this issue is not mandated, since the pertinent facts have been presented by way of argument and affidavits. After careful consideration of respondents' contentions and the Commission's responses, we have concluded *137 that the production of the records would not be unduly burdensome. We note, inter alia, that the employer's personnel director personally reviewed all of the employment records sought by the Commission, including the personnel files of its employees and applications of persons not hired, for the period covered by the subpoenas. It is apparent that the time involved is not substantial. So, too, the filing system used is such that the records could be made readily available. What is of importance is that the records are relevant and material, so that mere inconvenience to an employer should not justify withholding the documents from the Commission.
It would appear that the complaint of burdensomeness is based in large part on the assumption that respondents will be required to physically remove all of the subpoenaed records to the Commission's office or to utilize a substantial part of their employees' time and incur the expense involved in copying the records. However, what the Commission really wants (and all that it is entitled to in this case) is the opportunity to examine the records at the place where they are kept and to make, at its own expense and by its own employees, whatever copies it deems necessary for the purposes of its investigation. In addition, as we construe the subpoenas (and as the Commission has informed the Court in its memorandum), the subpoenas are not open-ended, so that the records to be produced need not go beyond the dates of the subpoenas.
Having concluded that the subpoenas should be enforced to the extent and in the manner above set forth, the Commission's motion for a protective order that discovery by respondents not be had is mooted.
Accordingly, respondents' motions to dismiss, to revoke the order to show cause, and for an evidentiary hearing are hereby overruled, and orders will be entered in each of the above causes in accordance with our determinations herein.