**Sandra McADAMS, Plaintiff,**

v.

**THERMAL INDUSTRIES, INC., Defendant.**

**Civ. A. No. 76–214.**

United States District Court, W. D. Pennsylvania.

March 10, 1977.

Howard A. Specter, Litman, Litman, Harris & Specter, Pittsburgh, Pa., for plaintiff.

Eugene J. Reinbold, Pittsburgh, Pa., for defendant.

## OPINION

SNYDER, District Judge.

Plaintiff Sandra McAdams complained under 42 U.S.C. § 2000e that Defendant Thermal Industries, Inc., discriminated against women in employment and in firing her because of her sex. Defendant has moved for summary judgment on the basis that the Court lacks subject matter jurisdiction because the EEOC failed to notify the Defendant of the charges within 10 days as required by § 2000e–5(b);[1] that the Plaintiff failed to file this suit within 270 days of filing charges with the EEOC in accordance with § 2000e–5(f)(1);[2] or that the Plaintiff did not timely file the charges with the EEOC under § 2000e–5(c) and (e).[3]

1. "(b) Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, . . . alleging that an employer . . . has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice)on such employer . . . within ten days, and shall make an investigation thereof."

2. "(f)(1) . . . If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a govern-

ment, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice."

3. "(c) In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings

The issue arises in a peculiar factual context. On or about April 18, 1973,[4] the EEOC received from Plaintiff her charges of sex discrimination and discriminatory layoff alleged to have occurred on March 16, 1973. Because the Pittsburgh Human Relations Commission has authority to seek or grant relief from such discriminatory practices within the city limits,[5] the EEOC deferred the case to the city commission pursuant to § 2000e–5(c) and 29 C.F.R. § 1601.12.[6] The Pittsburgh Human Relations Commission failed to act on the charges within 60 days, and in accordance with 29 C.F.R. § 1601.12(b)(1)(iv) the EEOC automatically assumed jurisdiction on June

have been earlier terminated, provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law.

". . .

"(e) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency."

4. The record is somewhat confused as to whether the EEOC received the charges on March 22, or April 18 of 1973. The difference would be of no significance here, and since the charges were deferred to local authorities on April 18, 1973, we will for convenience in discussion treat that as the date the charges were received.

5. See Ordinance No. 75 (effective February 8, 1967), amended by Ordinance No. 395 (effective July 7, 1969), 1969 Pittsburgh Municipal Record, Ordinance Appendix, at 225–26; *Bradford v. Peoples Natural Gas Co.,* 60 F.R.D. 432, 438 (W.D.Pa.1973).

6. The EEOC regulation provides at 29 C.F.R.: "§ 1601.12 Deferrals to State and local authorities.

(a) . . . It is the experience of the Commission that because of the present procedures, persons who seek the aid of the Commission are often confused and even risk loss of the protection of the Act. Accordingly, it is the intent of the Commission to simplify filing procedures for parties in deferral States and localities and thereby avoid the accidental forfeiture of important Federal rights.

(b) The following procedures shall be followed with respect to cases arising in the jurisdiction of '706 Agencies' to which the Commission defers . . . .

(1) Any document, whether or not verified, received by the Commission as provided in § 1601.7, which may constitute a charge cognizable under Title VII, shall be deferred to the appropriate 706 Agency, as further defined in paragraph (c) of this section, as provided in the procedures set forth below:

(i) All such documents shall be dated and time stamped upon receipt.

(ii) A copy of the original document shall be transmitted by registered mail, return requested, to the appropriate State or local agency, or, where the State or local agency has consented thereto, by certified mail, by regular mail or by hand delivery.

(iii) The aggrieved party and any person filing a charge on behalf of an aggrieved party shall be notified, in writing that the document which he or she sent to the Commission has been forwarded to the State or local agency pursuant to the provisions of section 706(c), and that unless the Commission is notified to the contrary, on the termination of State or local proceedings, or after 60 (or, where appropriate, 120) days have passed, whichever occurs first, the Commission the Commission (sic) and commence processing the case. Where the State or local will consider the charge to be filed with agency terminates its proceedings within sixty (60) (or, where appropriate, 120) days without notification to the Commission of such action the Commission will consider the charge to be filed with the Commission on the date the person making the charge was notified of the termination.

(iv) The 60-day (or, where appropriate, 120-day) period shall be deemed to have commenced at the time such document is mailed or delivered to the State or local authority. Upon notification of the termination of State or local proceedings or the expiration of 60 (or 120) days, whichever occurs first, the Commission will consider the charge to be filed with the Commission and will commence processing the case."

22, 1973. Thermal Industries asserts that its first notice of the charges was a phone call from the EEOC on December 24, 1974, and a written notice on January 10, 1975 (1½ years after the EEOC received the charges).[7] On May 12, 1975, the EEOC deferred the case a second time—this time to the Pennsylvania Human Relations Commission, requesting them to act on the matter quickly. Shortly thereafter the case was returned to the EEOC, and, having determined that reasonable cause existed to believe that Thermal Industries unlawfully discriminated against Sandra McAdams, the EEOC sent her a "notice of failure of conciliation and right to sue" letter on November 25, 1975. On February 17, 1976, Plaintiff commenced this suit.

The Defendant admits that if the Plaintiff's charges were properly filed with the EEOC on June 22, 1973 (when the EEOC purported to assume jurisdiction after the Pittsburgh Human Relations Commission failed to act within 60 days after deferral) they were timely under § 2000e–5(e). It also admits that the suit was initiated within 90 days of the EEOC's right to sue letter as required by § 2000e–5(f)(1). But the Defendant contends that even so, Plaintiff's failure to sue within 270 days from June 22, 1973, as mandated by § 2000e–5(f)(1) and the EEOC's failure to notify Thermal Industries of the charges within 10 days of that filing date, as required by § 2000e–5(b) would be fatal to her right to sue.

Alternatively, the Defendant argues that the charges were not "filed" with the EEOC on June 22, 1973, or at any time within 300 days of the date of discrimination as required by § 2000e–5(c) and (e). It maintains that the EEOC deferred the case a second time to the Pennsylvania Human Relations Commission because the discrimination did not occur within Pittsburgh City limits, so the Pittsburgh Commission lacked authority over the matter. Since § 2000e–5(c) provides that charges may not be filed with the EEOC until 60 days after deferral

to the state or local authority, and here the proper authority was the Pennsylvania Commission, the charges were not filed until after the second deferral. Under these facts, such filing would be more than 300 days after the date of discrimination, and the Court therefore lacks jurisdiction.

I. Failure of the EEOC to Timely Notify Defendant of the Charges

The § 2000e–5 prerequisites to individual employment discrimination suits are the timely filing of charges with the EEOC and the receipt of and timely acting upon a right to sue notice from the EEOC. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976). Thus, Courts have uniformly held that, if these requirements are met, an individual is not jurisdictionally barred from suit in federal court merely because the EEOC failed to notify the employer of the charges against it within the time schedule proscribed in § 2000e–5(b). This conclusion is based on sound rationale that the purpose of the notice is to give the employer opportunity to voluntarily comply with § 2000e (*Thompson v. Board of Education of Romeo Community Schools*, 71 F.R.D. 398, 413 (S.D. Mich.1976) and cases therein cited) and such purpose does not warrant the inequitable result of precluding from suit an aggrieved person who has done everything required of him to exhaust his administrative remedy. When the individual has no control over the EEOC conciliation process, he should not be denied access to the courts because of omissions by the EEOC in implementing that process. *Thornton v. East Texas Motor Freight*, 497 F.2d 416, 424 (6th Cir. 1974), quoting *Quarles v. Philip Morris, Inc.*, 271 F.Supp. 842 (E.D.Va.1967); *Clark v. Morgan's Austintown Foods, Inc.*, 405 F.Supp.

---

**7.** · Plaintiff contends that notice was in fact sent to the Defendant on or about June 22, 1973, as soon as the 60 days expired after the first deferral. Because of our holding as to the legal effect of the failure of notice even if it were not timely sent, see text, *infra*, at 159–160, we need not resolve this factual dispute and will consider the notice sent as of January 10, 1975.

1008, 1010 (N.D.Ohio 1976). Furthermore, although neither the employer nor the employee was at fault concerning the notice failure, the prejudice caused the aggrieved employee by forever precluding a judicial remedy would, in the overwhelming number of cases, be much greater than any prejudice caused the employer by the delay or lost opportunity to conciliate.[8]

## II. Plaintiff's Failure to Sue Within 270 Days of Filing Charges with the EEOC

■ Defendant similarly contends that for federal court jurisdiction § 2000e–5(f)(1) in effect requires the Plaintiff to commence suit within 270 days of filing charges with the EEOC (180 days to obtain a right to sue letter and 90 days thereafter to sue), even though the EEOC did not issue her a right to sue letter until well after the 180-day period. It argues that in this instance the Plaintiff herself was at fault for not demanding a right to sue letter after the 180-day conciliation period expired.

Although it might at first appear that the burden placed on a plaintiff to request a right to sue letter after 180 days would be insubstantial, this time period was not intended as part of the jurisdictional requirement of receipt of a right to sue notice. The § 2000e–5(f)(1) 180-day period does not create a fixed time limitation beyond which an individual can no longer rely on the administrative process without forfeiting his remedy in the courts; it affords the individual an open-ended choice of whether to continue to rely on EEOC representation or to sue immediately. *EEOC v. E. I. du-Pont deNemours & Co.,* 516 F.2d 1297, 1299–1031 (3d Cir. 1975) (holding that the *EEOC* is not confined by a 180-day limitation). The aggrieved person is thereby not compelled to endure lengthy administrative delays that may arise, but after 180 days may abandon the EEOC process if he perceives it to be too sluggish or ineffective. *Id.* at 1300, *quoting* 118 Cong.Rec. 7168 (1972). If he chooses to continue with EEOC representation and the administrative process, he does not prejudice his right to sue individually at a later time.

To hold otherwise would compel the individual to interfere with EEOC conciliation efforts at the expiration of 180 days, a clearly undesirable result not intended by Congress. Although the EEOC is not precluded from suing on behalf of the individual if no right to sue letter was issued after 180 days, *id.,* to avoid the risk of being excluded from any remedy in the courts by an adverse EEOC determination of reasonable cause, or any other reason which could cause the EEOC not to seek enforcement in the courts, the individual is forced to demand a right to sue letter. This interference would be counterproductive by frustrating " 'the congressional mandate that conciliation efforts be fully undertaken before resort to the courts.' " *Id.* at 1301, quoting *EEOC v. Kimberly-Clark Corp.,* 511 F.2d 1352 (6th Cir. 1975) (also holding that the EEOC is not limited by a 180-day restriction). Many discrimination cases are complex, and productive conciliation stages may only be reached after 180 days even with due diligence by the EEOC and the aggrieved employee. Moreover, as a matter of general policy, courts should encourage conciliation rather than the lawsuit as a means to resolve these disputes. We therefore hold that a plaintiff may rely on EEOC representation and the conciliation process without fear of being deprived of his remedy in the courts, and only when the EEOC notifies the plaintiff of failure of conciliation and his right to sue is he subject to a

---

**8.** We note, however, that upon a showing of inordinate delay and substantial prejudice caused by EEOC's failure to notify the Defendant of the charges, the *EEOC* may be barred from recovery on certain aspects, *see EEOC v. Airguide Corp.,* 539 F.2d 1038, 1042 (5th Cir. 1976), possibly on the basis of laches. See *EEOC v. North Hills Passavant Hospital,* 544 F.2d 664 (3d Cir. 1976).

We need not here consider the question of whether, even though we have jurisdiction over the matter, the doctrine of laches could preclude the individual plaintiff's recovery when the inordinate delay and substantial prejudice are caused by EEOC inaction. Defendant has not raised the issue of laches, and, at any rate, the record does not reveal such an inordinate delay or prejudice of such a substantial nature.

statutory time limitation of 90 days within which he must sue.

### III. Deferral to State Authorities and Timely Filing With the EEOC

 Defendant's final contention that the discrimination charges were not timely filed with the EEOC would, if true, raise a jurisdictional bar to suit. Section 2000e–5(b) provides that if a state or other local agency has authority to grant or seek the requested relief, the aggrieved person must first give that state agency an opportunity to resolve the matter before he may file charges with the EEOC. If the local authority fails to act within 60 days or earlier determines the matter, then charges may be filed with the EEOC. To give the individual ample time to exhaust the state remedy before filing with the EEOC in such situations, the requirement of filing charges with the EEOC within 180 days of the date of the discriminatory act is extended to 300 days. § 2000e–5(e). In *Love v. Pullman*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), the Supreme Court held that this state exhaustion requirement is satisfied if upon receipt of charges that first should have been brought before a local authority the EEOC defers the case to the local authority and pursuant to 29 C.F.R. 1601.12 automatically assumes jurisdiction if the local agency fails to act within 60 days or earlier makes a determination. Defendant here would narrowly interpret *Love v. Pullman* to compel the Plaintiff to bear the burden of any EEOC mistakes in deferral when she relies on the EEOC to defer the case instead of implementing the state procedures herself.

The purpose of deferral to state authorities is to permit as a matter of comity local authorities to work out their own problems. *See* 110 Cong.Rec. 13087 (1964). By creating this state exhaustion requirement, Congress did not intend to saddle individuals with burdensome legal technicalities or jurisdictional pitfalls. In a scheme in which aggrieved persons untrained in the law very often initiate the administrative process *pro se, see Love v. Pullman, supra,* at 527, and in which the only enforcement power is vested in the federal courts, the individual's access to the courts must be vigorously protected. *See Davis v. Valley Distributing Co.,* 522 F.2d 827, 832 (9th Cir. 1975); *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 460–61 (5th Cir. 1970). Thus, when an individual makes a good faith effort to comply with the administrative process by filing charges with the EEOC and relies on the special expertise of the EEOC to implement proper procedures, including deferral to the proper state agency, he should not be barred from suit. This result in no way permits circumvention of the conciliation process, since the EEOC must proceed with the matter after deferral to the state anyway. Consequently, the charges were filed with the EEOC on June 22, 1973, even if deferral might have been to the wrong local authority, and such filing was timely under § 2000e–5(e).

Defendant's motion for summary judgment must therefore be denied; an appropriate order will be entered.