NATIONAL ORGANIZATION FOR WOMEN, Suffield-Enfield Chapter, and Susan C. Madison, on behalf of herself and all others similarly situated,

v.

SPERRY RAND CORPORATION, Sperry Univac Division.

Civ. No. H–77–524.

United States District Court, D. Connecticut.

Oct. 11, 1978.

---

Phyllis Gelman, Susan R. Meredith, Connecticut Womens Educational & Legal Fund, Inc., New Haven, Conn., for plaintiffs.

Jay S. Siegel, Thomas Royall Smith, Siegel, O'Connor & Kainen, Hartford, Conn., for defendant.

## RULING ON MOTIONS TO DISMISS AND TO STRIKE

CLARIE, Chief Judge.

The plaintiffs, Susan C. Madison and the National Organization for Women, Suffield-

Enfield Chapter ("NOW"), brought this action against Sperry Rand Corporation, Sperry Univac Division, Madison's former employer, alleging various acts of employment discrimination. The plaintiffs allege that the defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Equal Pay Act of 1963, 29 U.S.C. § 206(d); and that the defendant has committed certain state common law torts against the plaintiff Madison. The plaintiffs seek both monetary and injunctive relief and have brought said action on behalf of a class of employees and prospective employees, who claim to have been injured by the employment practices of the defendant.

The defendant has moved to dismiss several of the plaintiffs' causes of action and to strike that portion of the complaint, which demands compensatory and punitive damages. In addition to those parts of the complaint which the plaintiffs have withdrawn,[1] the Court grants the defendant's motions to dismiss the Equal Pay Act claim, except insofar as it applies to the plaintiff Madison at the defendant's Windsor facility; and to strike the demand for compensatory and punitive damages with respect to the Title VII cause of action. In all other respects, the defendant's motions are denied.

### Statement of Facts

Susan C. Madison, a white female, was hired by the Sperry Univac Division of Sperry Rand Corporation on January 1, 1973 as an Administrative Branch Manager A at the marketing and customer service office located in Windsor, Connecticut. Her starting salary was $11,000 per year. She remained in that position until April of 1974, when she was promoted to Administrative Branch Manager B. She continued to serve in that capacity until her voluntary termination on October 7, 1977, at which time her annual salary was $17,316.

On October 9, 1976 Madison and NOW attempted to jointly file a charge with the Equal Employment Opportunity Commission ("EEOC") alleging sex and race discrimination in various aspects of the defendant's operations. The District Director of the EEOC advised NOW that the organization had no standing to institute a complaint in its own behalf, and requested that the complaint be amended to list Madison as the sole complainant; however, no such amendment was made. At the request of counsel for Madison the EEOC issued a right to sue letter to her on October 3, 1977. On March 31, 1977, the plaintiffs filed a charge with the Connecticut Commission on Human Rights and Opportunities and the present court action was instituted on October 7, 1977.

### Procedural Prerequisites For A Title VII Action

◼ The defendant challenges NOW's standing to sue for the following reasons: (1) Title VII provides that a civil action may be brought only by "the person claiming to be aggrieved," 42 U.S.C. § 2000e–5(f)(1), and NOW has not been aggrieved by any conduct alleged in the complaint; and (2) NOW has not satisfied the jurisdictional prerequisites to maintaining a Title VII suit, because no right to sue letter was issued to NOW. Additionally, the defend-

---

1. The plaintiffs have withdrawn several aspects of their complaint. The plaintiffs have withdrawn that portion of their § 1981 cause of action which was based on sex discrimination, in apparent recognition of the fact that § 1981 is limited to racial discrimination. *Georgia v. Rachel*, 384 U.S. 780, 791, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1965).

The plaintiffs have also withdrawn their sixth cause of action, which alleged a violation of the Thirteenth Amendment. Because the complaint does not allege that the defendant coerced any employee to work against his will, the plaintiffs could not have made out a cause of action based on the Thirteenth Amendment. *Flood v. Kuhn*, 443 F.2d 264, 268 (2d Cir. 1971), aff'd 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972).

Finally, the plaintiffs have withdrawn their seventh cause of action, which charged a violation of the Connecticut Fair Employment Practices Act, Conn.Gen.Stat. § 31–122 *et seq.* That Act, unlike Title VII, does not make specific provision for a private cause of action. *Pandis v. Sikorsky Aircraft Div.*, 431 F.Supp. 793, 796 (D.Conn.1977).

ant argues that the EEOC's failure to give the defendant notice of the charge filed with the EEOC is a jurisdictional bar to suit by either plaintiff.

With respect to the first argument, it must be noted that NOW does not claim to have sustained any injury to itself; rather, it is suing on behalf of its members who were allegedly harmed by the defendant's discriminatory acts. On more than one occasion the Supreme Court has held that an association has standing to represent its aggrieved members. *Sierra Club v. Morton,* 405 U.S. 727, 739, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *United States v. SCRAP,* 412 U.S. 669, 685, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 40, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). In fact, in this District it has been held that an organization does have standing to assert the rights of its members in a Title VII suit. *Bridgeport Guardians, Inc. v. Members of Bridgeport Civil Service Commission,* 354 F.Supp. 778, 783 (D.Conn.1973), *reversed on other grounds* 482 F.2d 1333 (2d Cir. 1973), *cert. den.* 421 U.S. 991, 95 S.Ct. 1997, 44 L.Ed.2d 481 (1975); *League of United Latin American Citizens v. City of Santa Ana,* 410 F.Supp. 873, 886-887 (C.D.Cal.1976). Since NOW has alleged in its complaint that the defendant's employment practices have injured one or more of its members, the fact that the organization itself may not have sustained any injury is not a bar to suit.

■ The Court finds that the failure to receive a right to sue letter from the EEOC does not disqualify NOW from bringing this action. The filing of timely charges of employment discrimination with the EEOC and the receipt of a right to sue letter from the EEOC are normally jurisdictional prerequisites to commencing a Title VII civil action. *McDonnell Douglas v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). However, since NOW instituted a complaint with the EEOC and requested a right to sue letter from the agency, it has fulfilled these prerequisites. It is not the fault of NOW that no right to sue letter was issued to the plaintiff organization.

The Court has ruled herein that NOW has standing to sue under Title VII on behalf of its members. Therefore, the EEOC erred in refusing to issue the right to sue letter. Having done everything within its power to comply with the procedural requirements of Title VII, NOW is not barred from maintaining the present action. *Bormann v. Long Island Press Publishing Co.,* 379 F.Supp. 951, 953 (E.D.N.Y.1974), *Cox v. Allied Chemical Corp., Local 216, International Union of Operating Engineers, AFL-CIO,* 382 F.Supp. 309, 313 (M.D.La.1974), *reversed in part on other grounds* 538 F.2d 1094 (5th Cir. 1976). The rationale of these decisions is that "The plaintiff is not responsible for the acts or omissions of the Commission. He . . . should not be denied judicial relief because of circumstances over which [he has] no control." *Quarles v. Philip Morris Co.,* 271 F.Supp. 842, 846-47 (E.D.Va.1967) (holding that the EEOC's failure to attempt conciliation of the dispute is not a jurisdictional bar to suit).

■ The same reasoning compels the Court to reject the defendant's claim that the EEOC's failure to serve notice of the charge on the defendant is a bar to suit by either Madison or NOW. Title VII specifies that "the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer . . within ten [10] days and shall make an investigation thereof." 42 U.S.C. § 2000e-5(b). The original charge was filed with the EEOC on October 9, 1976. The defendant alleges that it never received a copy of this charge, but that on December 29, 1976 it did receive notice from the EEOC that a charge had been filed against it. However, the defendant contends that this notice did not give the date, place and circumstances of the alleged unlawful employment practice, as required in the statute. The defendant's contention that this deficiency should bar suit by the plaintiffs has been answered elsewhere:

"[C]ourts have uniformly held that . . an individual is not jurisdictionally barred

from suit in federal court merely because the EEOC failed to notify the employer of the charges against it within the time schedule proscribed · in § 2000e–5(b)." *McAdams v. Thermal Industries, Inc.*, 428 F.Supp. 156, 159 (W.D.Pa.1977).

The present defendant did receive at least some notice of the charge which had been filed against it. In a similar case where the EEOC completely neglected to inform the defendant of the charge, the court held that a civil suit was not barred: "A Title VII complainant is not charged with the commission's failure to perform its statutory duties." *Russell v. American Tobacco Co.*, 528 F.2d 357, 365 (4th Cir. 1975), *cert. den.* 425 U.S. 935, 96 S.Ct. 1667, 48 L.Ed.2d 176 (1976). *See also Thornton v. East Texas Motor Freight*, 497 F.2d 416, 424 (6th Cir. 1974); *Foye v. United A. G. Stores Cooperative, Inc.*, 336 F.Supp. 82, 83 (D.C.Neb.1972); *Townsend v. Exxon Co.*, 420 F.Supp. 189, 192 (D.Mass.1976). The Court finds that the plaintiff NOW is a proper party to this Title VII action and that both the individual plaintiff and NOW have satisfied the jurisdictional prerequisites to commencing the present civil action.

### The Adequacy of the EEOC Charge

In an attempt to limit the scope of the lawsuit, the defendant seeks to dismiss the counts of the complaint which relate to the hiring, recruitment, and discharge practices of the employer, as well as the count relating to its actions taken against the plaintiff Madison in retaliation for her filing a charge with the EEOC.

■ The defendant urges that the issues of discharge and retaliation should be excised from the lawsuit, because those issues were not presented in the EEOC charge. There are two competing values in determining whether a variance between the EEOC charge and the civil complaint is a material one. On the one hand, the plaintiff should be required to give the EEOC such notice of his complaint as will enable the EEOC to make a reasonable attempt at conciliation between the parties at the administrative level; otherwise, the plaintiff would be frustrating the intention of Congress, that parties be encouraged to settle Title VII disputes without litigation, whenever it is possible to do so. On the other hand, courts have recognized that the initial charges are frequently filed by lay complainants, who are unfamiliar with the niceties of pleading, and that paying too much attention to form can deprive relief to those whom Title VII was designed to protect, merely because of their lack of sophistication. *Willis v. Chicago Extruded Metals Company*, 375 F.Supp. 362, 365 (N.D.Ill. 1974); *Tipler v. E. I. DuPont de Nemours and Co.*, 443 F.2d 125, 131 (6th Cir. 1971).

■ In attempting to reach an accommodation between these two values, courts have offered various formulations to test the adequacy of the EEOC charge. The Fifth Circuit has held that "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation, which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands*, 431 F.2d 455, 466 (5th Cir. 1970). Other courts have held that the civil complaint may include "any discrimination like or reasonably related to the allegations of the EEOC charge." *Oubichon v. North American Rockwell Corporation*, 482 F.2d 569, 571 (9th Cir. 1973). Regardless of which formulation is employed, the important question is whether the allegations of the EEOC charge are such as will give the defendant notice of the alleged kinds and areas of discrimination. *Jiron v. Sperry Rand Corp.*, 423 F.Supp. 155, 159 (D.Utah 1975).

■ The charge filed by the plaintiffs in the instant case stated, in pertinent part: "The employer discriminates against women and minorities in its recruitment, hiring, placement, promotion, transfer, job training and job assignment, and in terms and conditions of employment." While there is no specific mention of the word "discharge," the charge is so broad that the defendant employer would be put on notice that the plaintiffs are challenging virtually every aspect of the employment relationship, of which discharge is a part. In a similar case, the plaintiffs charged in the civil action that the defendant had discriminated in the

area of lay-offs and rehiring, but those two areas had not been mentioned in the EEOC charge. Holding that those two issues were properly raised in the civil suit, the court said:

"Plaintiffs, as continuing employees complaining about a wide variety of employment practices, implicitly bring under scrutiny all practices and policies relating to current employees, of which the lay-off policy is a part." *Jiron v. Sperry Rand Corp.*, 423 F.Supp. 155, 162 (D.Utah 1975).

The Court finds that the question of discharge is reasonably related to the allegations made in the administrative charge, and accordingly holds that the issue of discriminatory discharge may be raised in the present action.

■ There is a divergence of opinion as to whether the Title VII plaintiff must present a retaliation claim to the EEOC in order to be able to include such an allegation in his complaint. Some courts have refused to entertain claims of retaliation when such claims have not first been presented to the EEOC, reasoning that a charge of retaliation is different in kind from other Title VII violations. *See, e. g., Jiron v. Sperry Rand Corp.*, 423 F.Supp. 155, 162 (D.Utah 1975); *Eastwood v. Victor Temporaries*, 441 F.Supp. 51, 53 (N.D.Ga. 1977). Others have held that prior resort to the EEOC is not a prerequisite to including an allegation of retaliation in the civil suit. *Bernstein v. National Liberty International Corp.*, 407 F.Supp. 709, 713 (D.C.Pa.1976); *Held v. Missouri Pacific Railroad Company*, 373 F.Supp. 996, 1002 (D.C.Tex.1974); *Flesch v. Eastern Pa. Psychiatric Institute*, 434 F.Supp. 963, 970 (D.C.Pa.1977). The rationale of these latter cases is twofold: (1) retaliation is the kind of Title VII violation which "can reasonably be expected to grow out of the charge of discrimination," *Sanchez, supra*, 431 F.2d at 466, and (2) there is a strong policy justification in de-

terring an employer from attempting to discourage an employee from exercising his or her rights under the Civil Rights Act. Additionally, since it is the nature of retaliation claims that they arise after the filing of the EEOC charge, requiring prior resort to the EEOC would mean that in every case where retaliation is in issue the employee would have to file a second charge with the EEOC, thereby erecting another procedural barrier to a Title VII suit. Courts have expressed their reluctance to erect additional barriers to suit, noting that the private lawsuit is essential to obtaining the goals of Title VII, because the EEOC, unlike other federal agencies, has no enforcement powers of its own. *Sanchez v. United Brands*, 431 F.2d 455, 460 n.1 (5th Cir. 1970). This Court finds these arguments persuasive, and holds that the Court has jurisdiction over Madison's allegation of retaliation.[2]

■ The defendant further argues that the plaintiff Madison has no standing to challenge its hiring, recruiting, and discharge practices, inasmuch as she was in fact hired by the defendant and left her employment voluntarily. While it is true that she can claim no direct harm to herself because of these practices, Madison, as will be discussed in greater detail below, has standing to sue insofar as her "associational" interests have been harmed by the defendant's hiring, recruiting and discharge practices. The plaintiff organization, as discussed above, also has standing to raise these issues, since it has alleged that one or more of its members is aggrieved by the actions of the defendant in these three areas.

*Standing to Litigate Racial Discrimination*

■ The defendant charges that the plaintiff Madison, being white, lacks standing to file a Title VII complaint alleging discrimination against blacks. Some of the

---

**2.** Madison did amend her EEOC charge to include the allegation of retaliation. However, that amendment was not filed until after the civil complaint in the instant case was filed, and no right to sue letter has ever been issued with respect to that charge. Since the plaintiff has not exhausted her administrative remedies

with respect to that amended charge, the Court may not rest its decision on the ground that the issue of retaliation has been presented to the EEOC. *Ortega v. Construction & General Lab. U. No. 390*, 396 F.Supp. 976, 980 (D.Conn. 1975).

district courts have reasoned that whites in such a case are not "person[s] claiming to be aggrieved" within the meaning of 42 U.S.C. § 2000e–5(b) and therefore have denied standing. *Ripp v. Dobbs House, Inc.*, 366 F.Supp. 205, 208–210 (N.D.Ala.1973); *EEOC v. Quick-Shop Markets*, 396 F.Supp. 133, 135 (D.C.Mo.1975), *affirmed on other grounds* 526 F.2d 802 (8th Cir. 1975) (*per curiam*). However, the only two circuit courts which have addressed the question have held that a white may bring a Title VII action to redress racial discrimination against blacks. *EEOC v. Bailey Co., Inc.*, 563 F.2d 439, 452–454 (6th Cir. 1977); *Waters v. Heublein, Inc.*, 547 F.2d 466, 469–70 (9th Cir. 1976). This Court concurs with the legal findings in these two latter cases.

The primary justification for this holding is that the case *sub judice* is logically indistinguishable from *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), where a unanimous Supreme Court held that whites have standing under Title VIII of the Civil Rights Act of 1968 to challenge discriminatory housing policies aimed at blacks. The rationale of *Trafficante* is that persons who are not themselves the object of discrimination may nonetheless be "aggrieved" within the meaning of the statute, because of "the loss of important benefits from interracial associations" in their home environment. 409 U.S. at 209–210, 93 S.Ct. at 367. This reasoning is equally applicable here:

> "interpersonal contacts—between members of the same or different races—are no less a part of the work environment than of the home environment . . . The possibilities of advantageous personal, professional or business contacts are certainly as great at work as at home. The benefits of interracial harmony are as great in either locale." *Waters, supra*, 547 F.2d at 469.

There are other compelling reasons for applying the *Trafficante* ruling to a Title VII case. First, the pertinent statutory language in Titles VII and VIII is virtually identical. Title VII permits charges to be instituted by "a person claiming to be aggrieved," 42 U.S.C. § 2000e–5(b), while Title VIII refers to "person aggrieved." 42

U.S.C. § 3610(a). Second, both Titles are enforced by the same procedures: the filing of a complaint with an administrative agency, notification to the offending party, investigation and attempts at conciliation by the agency, and finally a private civil suit. Third, the purpose of both statutes is the same: outlawing discrimination based on race, religion, national origin, and sex. *EEOC v. Bailey, supra*, 563 F.2d at 453. Given these similarities in the language, mechanism and purpose of the two statutes, it is inconceivable that the Supreme Court would find *Trafficante* distinguishable from the instant case on the ground that *Trafficante* involved housing while the present case involves employment.

Further support for this proposition is found in the EEOC decisions holding that whites have standing to challenge discrimination aimed at blacks. EEOC Decision No. 72–0591 (1971), CCH EEOC Decisions (1973) ¶ 6314, at 4564; EEOC Decision No. 71–909 (1970), CCH EEOC Decisions ¶ 6193, at 4329. While it is true that the EEOC's interpretation of Title VII is not controlling, *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), the interpretations of the agency responsible for administering Title VII are entitled to "great deference." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 279, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). The Court therefore holds that the plaintiff Madison has standing to challenge under Title VII the alleged racially discriminatory practices of the defendant. It should be emphasized that the Court's ruling is limited to holding that Madison has standing to sue for her own loss of associational benefits. The Court has no need to decide at the present time whether Madison would be an adequate class representative for blacks who may have been the targets of discrimination. *See Waters v. Heublein, Inc., supra*, 547 F.2d at 470.

The plaintiff organization, having alleged in its complaint that one or more of its black members have been the object of racial discrimination, also has standing on this issue. See discussion at pages 1341–1342, *supra*.

■ The defendant further challenges Madison's standing to bring an action under 42 U.S.C. § 1981, alleging racial discrimination against blacks. There is no doubt that § 1981 affords a cause of action to redress racial discrimination in private employment. *Johnson v. Railway Express Agency,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). And it has been held that § 1981 prohibits racial discrimination in private employment against whites as well as against nonwhites. *McDonald v. Santa Fe Trail Transp. Co., supra,* 427 U.S. at 287–96, 96 S.Ct. 2574. The question remaining is whether a white can bring suit under § 1981 for the loss of associational interests due to employment discrimination aimed at blacks.

While there are no cases directly on point,[3] a number of courts have held that a white does have standing to sue under § 1981 for injury suffered by him as a result of discrimination aimed at blacks. A white who lived in a neighborhood populated primarily by white employees of the defendant company and was forced to retire early because he had sold his house to a black, was held to have standing under § 1981. *DeMatteis v. Eastman Kodak,* 511 F.2d 306, 312 n.9 (2d Cir. 1975), *modified* 520 F.2d 409 (2d Cir. 1975). The white employee who is fired for attempting to vindicate the rights of racial minorities has standing under § 1981. *Cubas v. Rapid Am. Corp. Inc.,* 420 F.Supp. 663, 666–67 (E.D.Pa. 1976); *Winston v. Lear-Siegler, Inc.,* 558 F.2d 1266, 1270 (6th Cir. 1977). The Supreme Court has also permitted whites to assert injuries which are derivative to discrimination aimed at blacks. A white was held to have standing to challenge his expulsion from a privately operated park,

when he alleged that his expulsion was due to his attempts to have a black admitted to the park. *Sullivan v. Little Hunting Park,* 396 U.S. 229, 237, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969).[4] In *Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953) the Court permitted a white property owner who had been sued for selling his property to a black in contravention of a restrictive covenant, to raise as a defense the black's right to make a contract to purchase the property without regard to his race. *Id.* at 257, 73 S.Ct. 1031.

In only one case where a white was held to have standing to assert injuries which resulted from discrimination against blacks did the court specifically mention the loss of association with blacks as an element of injury in a § 1981 suit. Holding that whites had standing to sue under the Civil Rights Act of 1871, when they were denied admittance to a pool in a private amusement park, the court noted that admittance had been refused the whites because they "were in association with Negroes . . ." *Valle v. Stengel,* 176 F.2d 697, 702 (3rd Cir. 1949). While no other cases specifically mention the loss of association, in a number of cases the facts indicate that the harm done to the white plaintiff was in the nature of a loss of the opportunity to associate with blacks. *See, Adickes v. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (white who was refused service in lunchroom due to state-enforced custom of racial segregation in public restaurants had § 1983 cause of action); *Faraca v. Clements,* 506 F.2d 956, 959 (5th Cir. 1975) (§ 1981 provides cause of action for white who is denied employment due to his marriage to a black); *Walker v. Pointer,* 304 F.Supp. 56, 60 (N.D.Tex.1969) (whites had

---

**3.** In the only case which is on all fours with the present one, the court held that the white employee lacks standing to sue under § 1981 for the loss of association with blacks. *Ripp v. Dobbs Houses, Inc.,* 366 F.Supp. 205, 211 (N.D. Ala.1973). However, the court's basis for this conclusion was the proposition, which has subsequently been discredited by *McDonald v. Santa Fe Trail Transp. Co., supra,* 427 U.S. at 286–87, 96 S.Ct. 2574, that § 1981 is applicable only to blacks. Consequently *Ripp* has no precedential value for the case *sub judice.* For

the same reason *Van Hoomissen v. Xerox Corporation,* 368 F.Supp. 829 (N.D.Cal.1973), holding that a white plaintiff has no § 1981 cause of action when he is fired for his advocacy of minority hiring, is not persuasive here.

**4.** That case arose under 42 U.S.C. § 1982. However, the courts, recognizing that §§ 1981 and 1982 are similar in wording and intent, have held that standing to sue should be the same as to both statutes. *DeMatteis v. Eastman Kodak, supra,* 511 F.2d at 312 n.9.

cause of action when they alleged they were evicted from their apartments because they occasionally had black visitors); *Lamb v. Sallee*, 417 F.Supp. 282, 286 (E.D.Ky. 1976) (white who was refused an apartment because his roommate was black had § 1982 claim); *Bishop v. Pecsok*, 431 F.Supp. 34, 37 (N.D.Ohio 1976) (same).

*Wisconsin NOW v. State of Wisconsin*, 417 F.Supp. 978, 982 (W.D.Wis.1978), cited by the defendant, is not apposite here. The court in that case rejected the white plaintiff's attempt to raise the rights of blacks; there was no allegation of injury to the plaintiff herself. By contrast, the present plaintiff is suing for the loss of her own right to associate with blacks at the place of her employment; she is not attempting to vindicate the rights of blacks who have allegedly been the object of the defendant's discrimination.

Apart from the case precedents, discussed above, which would support Madison's standing under § 1981, there is the policy argument that if the defendant's practice of discriminatory hiring is entirely successful, there may never be a black person with sufficient interest to challenge the defendant's actions. In such a case the white plaintiff would be the only effective adversary of the discriminatory conduct. *Cf. Barrows v. Jackson, supra,* 346 U.S. at 257, 73 S.Ct. 1031; *Sullivan v. Little Hunting Park, supra,* 396 U.S. at 237, 90 S.Ct. 400. Consequently, the Court holds that the plaintiff Madison has standing to sue pursuant to § 1981. Once again, the limited scope of this holding must be noted. As with the Title VII claim on racial discrimination, Madison's standing to sue for racial discrimination under § 1981 extends only to her own loss of associational benefits with blacks; the Court expresses no opinion as to whether she would be an appropriate class representative to sue on behalf of the blacks who were allegedly the objects of the defendant's discrimination.

Since the complaint alleges that members of NOW have been subjected to race-based discrimination, the organization also has standing to sue, under § 1981, for the harm done to its members. See discussion at pages 1341–1342, *supra.*

*Punitive and Compensatory Damages*

■ The defendant has moved to strike the plaintiff's claim for compensatory and punitive damages. Though there is a split of authority on the issue, "the clear majority of federal courts, upon analysis and statutory history of Title VII, have concluded that neither compensatory nor punitive damages are available in a Title VII case . . . ." *Curran v. Portland Superintending School Committee*, 435 F.Supp. 1063, 1078 (D.Me.1977); *see also Richerson v. Jones,* 551 F.2d 918, 926 (3rd Cir. 1977). The courts in this District have already announced their agreement with this majority position. *Campbell v. A. C. Petersen Farms, Incorporated*, 69 F.R.D. 457, 468 (D.Conn.1975); *Postemski v. Pratt & Whitney Aircraft*, 443 F.Supp. 101, 102 (D.Conn. 1977). The rationale for this conclusion is that the statute permits the court to order back pay "or any other *equitable* relief . . . .," 42 U.S.C. § 2000e–5(g) (emphasis added), and punitive and compensatory damages have traditionally been considered to be *legal* remedies. *Jiron v. Sperry Rand Corp., supra,* 423 F.Supp. at 165. Accordingly, the Court grants the defendant's motion to strike the claim for compensatory and punitive damages with respect to the Title VII count.

■ However, with respect to the § 1981 cause of action, the motion to strike is denied. The Supreme Court has held that both compensatory and punitive damages are recoverable in a § 1981 suit. *Johnson v. Railway Express,* 421 U.S. 454, 460, 95 S.Ct. 1716 (1975). Moreover, because "Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination," the plaintiffs are entitled to pursue their remedies under Title VII and § 1981 simultaneously and are not put to an election of remedies. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 48–49, 94 S.Ct. 1011, 1020, 39 L.Ed.2d 147 (1974). *See also Johnson v. Railway Express, supra,* 421 U.S. at 460, 95 S.Ct. 1716; *Goss v. Revlon,* 548 F.2d 405, 407 (2d Cir. 1976); *Maldonado v. Broadcast Plaza Inc.,* 10 F.E.P. Cases 839,

840 (D.Conn.1974). Thus, compensatory and punitive damages are recoverable on the § 1981 count, even though they cannot be recovered on the Title VII count.

### The Equal Pay Act

The plaintiffs' second cause of action charges intentional violations of the Equal Pay Act of 1963, 29 U.S.C. § 206(d), alleging that wage differentials exist throughout the Sperry Rand Division between women and men who perform the same tasks. The defendant argues that the equal pay claim should be limited to the Windsor facility and that only the plaintiff Madison should be permitted to press this claim.

The Equal Pay Act prohibits wage discrimination on the basis of sex for employees doing the same work in the same "establishment." While that term is nowhere defined in the Act, the Department of Labor, which is the administrative agency charged with administering the Act, has provided, by regulation, that the term establishment "refers to a 'distinct physical place of business' rather than to 'an entire business or enterprise' which may include several places of business." 29 C.F.R. § 800.108. More specifically, the regulations provide:

"It should be kept in mind, in determining the equal pay provisions, that 'employer' and 'establishment' as used in these and other provisions of the Act are not synonymous terms. An employer may have more than one establishment in which he employs employees within the meaning of the Act. In such cases, the legislative history makes clear that there shall be no comparison between wages paid to employees in different establishments." 29 C.F.R. § 800.103.

The courts have uniformly agreed with the Labor Department's construction of the term "establishment," and have limited equal pay claims to the particular facility where the plaintiff is employed. *Mitchell v.*

**5.** Both *Bekins* and *Phillips* arose in the context of a dispute over the minimum wage and maximum hour provisions of the Fair Labor Standards Act of 1938. However, the Equal Pay Act of 1963 was incorporated into the Fair

*Bekins Van & Storage Co.,* 352 U.S. 1027, 77 S.Ct. 593, 1 L.Ed.2d 589 (1957) (*per curiam*); *Phillips Co. v. Walling,* 324 U.S. 490, 496, 65 S.Ct. 807, 89 L.Ed. 1095 (1945)[5]; *Hodgson v. City Stores, Inc.,* 332 F.Supp. 942, 946 (M.D.Ala.1971), *aff'd sub nom. Brennan v. City Stores, Inc.,* 479 F.2d 235 (5th Cir. 1973); *Brennan v. Sears, Roebuck & Co.,* 410 F.Supp. 84, 88 (N.D.Iowa 1976).

Plaintiffs urge that the Court should not limit the equal pay claim to the Windsor facility, where the plaintiff Madison is employed at this stage of the proceedings, because facts may later be developed to demonstrate that two distinct places of the defendant's enterprise constitute a single establishment. They cite *Shultz v. Corning Glass Works,* 319 F.Supp. 1161 (W.D.N.Y. 1970), *modified* 474 F.2d 226 (2d Cir. 1973), where the court held that two factories owned by the same company constituted a single establishment. The court noted that the two factories were located back to back, were connected by passageways and shared a single office building. Since the plaintiffs have made no allegations of similar factors in the instant case, the defendant's motion to limit the equal pay claim to the Windsor facility is granted.

The defendant's contention that the equal pay claim should be limited to the plaintiff Madison is equally well-founded. The Equal Pay Act specifies that:

"No employee shall be a party plaintiff to such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

Because this section envisions an "opt in" procedure, as opposed to the "opt out" provision of a class action brought pursuant to Fed.R.Civ.P. 23, each plaintiff in a purported class must file his consent with the court. *Pandis v. Sikorsky Aircraft Division of U.T. C.,* 431 F.Supp. 793, 796 (D.Conn.1977). It has also been held that, due to the specific language of § 216(b), an organization may

Labor Standards Act, and the Labor Department regulations provide that the term "establishment" is to be given the same interpretation regardless of which section of the statute is in question. 29 C.F.R. § 800.103.

not bring an equal pay claim on behalf of its members. *EEOC v. American Telephone and Telegraph Corp.,* 365 F.Supp. 1105, 1120 (E.D.Pa.1973), *modified,* 506 F.2d 735 (3rd Cir. 1974). Since the plaintiff Madison is the only person to file a consent, she is the only one entitled to maintain the equal pay claim. Consequently, the defendant's motion to dismiss that claim, as to NOW and as to all others who have not opted in, is granted.[6]

### The State Tort Claims

[15] The plaintiff Madison charges that the harassment to which she was subjected in retaliation for her complaint to the EEOC constituted the intentional infliction of emotional harm, libel and slander, all in violation of Connecticut law. Madison claims that the proof on these claims will be the same as the proof which she will offer on her charge that the defendant retaliated against her for filing a claim with the EEOC. It is therefore clear that the state and federal claims derive from a common nucleus of operative fact, and this Court has the power to hear the state claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Moreover, since the plaintiff will have to present the very same evidence on her Title VII claim as on her state claims, notions of judicial economy and fairness to the litigants dictate that this Court exercise pendent jurisdiction over the state law claims. *Id.* at 726, 86 S.Ct. 1130; *Leather's Best Inc. v. S. S. Mormaclynx,* 451 F.2d 800, 811 (2d Cir. 1971).[7]

Because the Court has already ruled that punitive damages are recoverable in the plaintiffs' § 1981 cause of action, this is not a case where the plaintiff is utilizing state law to obtain a remedy which would not be available under the federal law claim. *Cf. Van Hoomissen v. Xerox Corporation,* 368 F.Supp. 829, 840 (N.D.Cal.1973) (holding that a Title VII plaintiff may not enhance the damage potential by joining a state law claim for intentional infliction of emotional harm). Therefore the Court denies the defendant's motion to dismiss the state law tort claims.

### Conclusion

The Court grants the defendant's motions to dismiss the Equal Pay Act claim, except insofar as it applies to the plaintiff Madison at the defendant's Windsor facility, and to strike the demand for compensatory and punitive damages with respect to the Title VII cause of action. In all other respects, the defendant's motions are denied. Specifically, the Court finds that the plaintiff NOW has standing to pursue this action on behalf of its aggrieved members; that both plaintiffs have satisfied the jurisdictional prerequisites to a Title VII suit; that the issues of hiring, discharge, recruitment and retaliation are properly before the Court; that both plaintiffs have standing to sue for racial discrimination under both Title VII and § 1981; that compensatory and punitive damages are recoverable on the § 1981 claim; and that the Court has pendent jurisdiction over the state tort claims.

An amended complaint, consistent with the foregoing opinion, shall be filed within ten (10) days of this date.

SO ORDERED.

---

6. The plaintiffs contend that the Court should not dismiss as to those who have not filed a consent so as to give the plaintiffs the opportunity to find others willing to join the action. If others wish to file their consents at a later date, the plaintiffs may make a motion to amend the complaint at that time. The same is true with respect to the plaintiffs' claim that they may later develop facts to indicate that the Windsor facility should not be treated as a separate establishment.

7. The Court, at this stage of the pleadings, must accept as true Madison's allegation that the proof on the retaliation issue will be the same as on the state tort claims. Since "the issue whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation," the Court may dismiss the state tort claims at a later time if the facts so warrant. *United Mine Workers v. Gibbs, supra,* 383 U.S. at 727, 86 S.Ct. 1130.